UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

KEITH THOMAS,
CDCR #T-67081,

                                    Plaintiff,

vs.

CHU, Physician; BASTO, Dietician;
POLLAN, Warden; GLYNN, Chief
Medical Officer,

                                    Defendants.

Case No.:  3:20-cv-00245-GPC-BGS

**ORDER:**

**(1)  GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS [ECF No. 2]**

**(2)  DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND § 1915A(b)**

**AND**

**3)  DENYING MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER [ECF No. 4]**

        Plaintiff Keith Thomas, currently incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, and proceeding pro se, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. *See* Compl., ECF No. 1 at 1. Plaintiff did not pay the filing fee required by 28 U.S.C. § 1914(a) at the time of filing; instead, he

1

submitted a certified Prison Certificate and CDCR Inmate Statement Report, which the Court construes as a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 2). Plaintiff has also filed a "Motion Order to Show Cause for a Preliminary Injunction & Temporary Restraining Order ("TRO")," attached to which are more than a hundred pages of exhibits and two declarations offered in support both of his TRO and his Complaint. *See* ECF No. 4 at 9–18, 87–97.

Plaintiff's Complaint itself is sparse. He alleges he faces "threats of violence" from his cellmate due to his medical vulnerabilities, claims RJD dietician Basto denied him a dietary supplement, and contends Warden Pollan[1] failed to immediately place him in the "GP"[2] based on an "agreement [to] withdraw[] [his] 602 appeal." Compl., ECF No. 1 at 3. Plaintiff does not identify specific constitutional bases for any of these claims; but with respect to all three, he refers to the factual allegations contained in the declarations attached to his TRO, and his TRO invokes both the Eighth and Fourteenth Amendments.[3] *Id.*; *see also* ECF No. 4 at 2, 9–18, 87–97. Plaintiff seeks an "immediate emergency injunction" requiring his "single cell" and "GP status," the "renewal of diet[ary supplements]," and $200,000 in general and punitive damages. *See* Compl. at 7.

/ / /

---

[1] The Court's presumes Plaintiff's Complaint currently misspells Warden Pollard's name as Pollan.

[2] "GP" is an abbreviation for General Population. *See* Cal. Code Regs., tit. 15 § 3269 ("Inmates shall accept Inmate Housing Assignments (IHAs) as directed by staff. It is the expectation that all inmates double cell, whether being housed in a Reception Center, General Population (GP), an Administrative Segregation Unit (ASU), a Security Housing Unit (SHU), or specialty housing unit. If staff determines an inmate is suitable for double celling, based on the criteria as set forth in this section, the inmate shall accept the housing assignment or be subject to disciplinary action for refusing.").

[3] Because Plaintiff explicitly requests that the Court "refer to the attached declaration[s]" in the body of his Complaint, *see* Compl. at 3, the Court will consider the facts alleged therein as incorporated by reference when determining whether he has stated any plausible claims upon which § 1983 relief may be granted. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

1

## I.      Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[4] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S.  __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

*/ / /*

---

[4]  In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

Plaintiff has submitted a copy of his CDCR Inmate Statement Report as well as a Prison Certificate completed by an accounting officer at RJD, which the Court construes as his request to proceed IFP. *See* ECF No. 2; ECF No. 4; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. This certificate and statements show Plaintiff has carried no average monthly balance, has had no monthly deposits credited to his account over the 6-month period immediately preceding the filing of his Complaint, and had no available funds to his credit at the time of filing. *See* ECF No. 2 at 1.

Therefore, the Court **GRANTS** Plaintiff leave to proceed IFP (ECF No. 2) and assesses no initial partial filing fee.[5] *See* 28 U.S.C. § 1915(b)(1), (b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing

---

[5] The Court takes judicial notice that Plaintiff has been previously denied leave to proceed IFP in this district pursuant to 28 U.S.C. § 1915(g) because he has filed *fifteen* previous civil actions or appeals dismissed as frivolous, malicious, or because they failed to state a claim upon which relief could be granted. *See, e.g., Thomas v. Doe, et al.,* Civil Case No. 3:19-cv-00729-LAB-BGS (S.D. Cal. June 5, 2019 Order Denying Motion to Proceed IFP and Dismissing Action without prejudice pursuant to 28 U.S.C. § 1915(g) (ECF No. 5 at 5–7) (documenting Plaintiff's "strikes"); *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (court "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'") (citation omitted). "There is, however, an exception to the PLRA's three-strikes rule, allowing for filing without prepaying the $350 fee when 'the prisoner is under imminent danger of serious physical injury.'" *Andrews v. Cervantes*, 493 F.3d 1047, 1049–50 (9th Cir. 2007) (quoting § 1915(g)). In his sworn declarations, Plaintiff attests that he is and continues to be exposed to "ongoing threats and attack by [his] cellmate" due to the possibility of an "uncontrolled[ed] mishap[]" and his need to wear a diaper due to his incontinence. *See* Compl. at 3; ECF No. 4 at 10, 12. Specifically, Plaintiff claims his cellmate "ha[s] attack[ed] him verbally," is "harassing" him about his use of a diaper, and has "confronted [him] in [a] fighting stance about these issues." *See* ECF No. 4 at 10, 12, 95–96. The Court finds these allegations sufficient, when considered as a "threshold procedural question," to plausibly suggest Plaintiff faced "ongoing danger" of physical injury at the time of filing. *See* 28 U.S.C. § 1915(g); *Andrews*, 493 F.3d at 1057 (distinguishing plausible allegations of "imminent danger" exception under § 1915(g) at the "threshold stage" as distinct from the court's duty to "evaluate the merits of the suit."); *see also Williams v. Paramo*, 775 F.3d 1182, 1189-1190 (9th Cir. 2015) (discussing court's duty to liberally construe a prisoner's "facial allegations" and determine if complaint "makes a plausible allegation" of imminent or ongoing danger at the time of filing).

dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered."). However, the Court directs the Secretary of the CDCR, or his designee, to garnish the $350 total fee owed in this case from Plaintiff's trust account and to forward the full filing fee owed for this case to the Clerk of the Court in installments pursuant to 28 U.S.C. § 1915(b)(2).

## II.  Initial Screening per 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a preliminary review and initial screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).[6] Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion thereof, if it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rules 8(a) and 12(b)(6) require a complaint to "contain sufficient factual

---

[6] The "limited office of § 1915(g)" in determining "whether the filing fee must be paid upfront or later, ... [is] separate" from the court's duty to "screen[] out meritless suits early" pursuant to § 1915(e)(2)(B) and § 1915A(b). *Williams*, 775 F.3d at 1189 (citing *Andrews*, 493 F.3d at 1056–57).

matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. And while the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

"Courts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference" to be part of the pleading when determining whether the plaintiff has stated a claim upon which relief may be granted.[7] *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

## B.   Plaintiff's Allegations

As noted above, Plaintiff's Complaint broadly outlines what appear to be three separate claims for relief, refers the Court to his declarations and exhibits in support, and names the following Defendants: Dr. Chu, Chief Medical Officer Glynn, Warden Pollan, and a dietician named Basto. *See* Compl., ECF No. 1 at 2–3.

In Claim 1, Plaintiff alleges he wears a diaper as the result of incontinence, and that this and renders him vulnerable to "threats of violence" at the hands of inmate Thedford, his cellmate, who may be exposed to an "uncontoll[ed] mishap." *Id.* at 3. Sometime in 2019, Plaintiff contends he was treated by Dr. King at Alvarado Hospital

---

[7] The Court is not, however, required to "to wade through exhibits to determine whether cognizable claims have been stated," when it screens a complaint pursuant to 28 U.S.C. § 1915(e) and § 1915A. *Woodrow v. Cty. of Merced*, No. 1:13-cv-01505-AWI, 2015 WL 164427, at *4 (E.D. Cal. Jan 13, 2015).

and to have undergone a colonoscopy at "La Jolla San Diego Medical Hospital." *See* ECF No. 4 at 87–88. While he had a "dispute" with inmate Robinson who was his cellmate at the time, Robinson was "moved to CCCMS Building II, and Plaintiff was thereafter left "alo[ne] for two months," during which he attended follow-up "tele-med" appointments with "different physicians" and was supplied diapers and sanitary supplies. *Id.* at 88.

Plaintiff alleges he is assigned to RJD's C-Yard in the "EOP Building," and that Dr. Chu "was assigned to [the] EOP medical clinic."[8] After his colonoscopy, Plaintiff "was still wearing [a] diaper," but was given a new cellmate named Thedford. *Id.* Because Plaintiff "experience[d] the same complaint[s] with … Thedford as he had before with Robinson, Plaintiff "visit[ed] Dr. Chu about [his] incontinen[ce]," and "asked to be place[d] on single cell status."[9] *Id.* Plaintiff claims Dr. Chu refused "because he can only give single cell status when a person ha[s] an infectious disease … that is contagious." *Id.* at 89. Plaintiff also contends Warden Pollan failed to "provide [him] emergency single-cell status," and is responsible for his plight because Pollan "never respon[ded]" to a Government Claim giving "notice of the circumstance." *See* Compl., at

---

[8] The Enhanced Outpatient Program (EOP) is for inmates who show "acute onset or significant decompensation of a serious mental disorder" and/or are unable to function in the prison general population. *Coleman v. Brown*, 28 F. Supp. 3d 1068, 1075 (E.D. Cal. Apr. 10, 2014) (internal quotations and citation omitted).

[9] Plaintiff does not allege when he first requested a single-cell recommendation from Dr. Chu, but the Government Claim Form he alleges to have addressed to Warden Pollan reports the date of Dr. Chu's denial as January 2, 2020. *See* ECF No. 4 at 9–10, 21. An undated CDCR 602 HC Health Care Grievance Form, Tracking # RJD HC 20000184, also challenging Chu's denial and requesting "permanent single cell status" based on Plaintiff's incontinence is also attached as one of his many exhibits. *See* ECF No. 4 at 175–178. Plaintiff also includes a February 6, 2020 Institutional Level Rejection Notice of RJD HC 20000184. *Id.* at 179. This appeal was rejected because it raised issues "outside [] health care jurisdiction." *Id.* The Rejection Notice also advised Plaintiff to address his requests for a single cell "through the appropriate custody channels," and informed him that "[p]er the Health Care Department Operations Manual, Section 3.6.2, Comprehensive Accommodation, except for control of infectious disease or for mental health reasons recommended by a Mental Health Interdisciplinary Treatment Team, housing (single cells, cell housing, dormitory housing) is not considered a medically necessary accommodation and will not be ordered by health care staff." *Id.*

2; ECF No. 4 at 9–10, 21–22.[10]

In Claim 2, Plaintiff claims Dietician Basto "denied the … renewal of [his] diet of Boost," a nutritional supplement, "which the physician order[ed]" based on his weight loss. *See* Compl. at 2, 3; *see also* ECF No. 4 at 90. In support, Plaintiff attaches four separate CDCR 7362 Health Care Service Request Forms, all of which request a renewal of his diet and prescription for Boost, set to expire on January 29, 2020. *See* ECF No. 4 at 124–130. In his TRO, Plaintiff contends Dr. Chu had previously "order[ed] Boost (resource) because of [his] weight loss," and "based upon [his] incontinence bow[e]l problem," but "the responsible nurse did not schedule [him] to visit the physician" for a renewal. *See* ECF No. 4 at 90.

In Claim 3, Plaintiff claims only that Warden Pollan "failed to immediately make [him] G.P." based on an "agreement" to withdraw [a] 602 appeal." *See* Compl. at 3; ECF No. 4 at 11. In support, Plaintiff refers to Exhibit D attached to his TRO. *See* ECF No. 4 at 11, 43–59. This exhibit is comprised of two separate CDCR 602 Inmate/Parolee Appeals, Log No. RJD-C-19-5685, dated September 7, 2019, and Log No. RJD-C-19-7725, dated December 5, 2019. *Id.* at 46, 56.

In Log No. RJD-C-19-5685, Plaintiff asked to "rescind" his SNY status,[11] and to

---

[10] The Court notes Plaintiff's Government Claim is not addressed to nor does it mention Warden Pollan. *See* ECF No. 4 at 21–22. Instead, Plaintiff's California Government Claim appears to have been mailed to the California Office of Risk and Insurance Management in West Sacramento. *See* ECF No. 4 at 22; *see also Jenkins v. Micks*, No. 1:14-CV-3522 (NJV), 2014 WL 6241217, at *3 (N.D. Cal. Nov. 14, 2014) ("Under California Government Code section 945.4, "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented ... until a written claim therefor has been presented to the public entity and has been acted upon by the [Government Claims] board, or has been deemed to have been rejected by the board.").

[11] Plaintiff does not explain the difference between inmates designated for housing in the general population and those designated for a sensitive needs yard. However, in late 2017, the CDCR and California Correctional Health Care Services ("CCHCS") initiated a "Statewide Non-Designated Enhanced Outpatient Program and Inpatient Treatment Initiative," indicating they would "no longer recognize the classification designations of Sensitive Needs Yard ("SNY") or General Population ("GP") for housing EOP and inpatient inmates." *See Poslof v. Martel*, No. 3:18-CV-761-MMA-AGS, 2019 WL 2008855, at *1 (S.D. Cal. May 7, 2019); *see also Montalvo v. Diaz*, No. 3:19-CV-00363-CAB-JLB, 2020

be re-designated for GP status within [the] EOP Program." *Id.* at 46. This appeal appears to have proceeded to a second level of review, and was withdrawn by Plaintiff on November 8, 2019, based on a "meet[ing] with [Plaintiff's] assign[ed] CCI." *Id.* at 47. On December 5, 2019, however, Plaintiff filed Log No. RJD-C-19-7725 requesting a second interview about the withdrawal of his 602 "for the purpose of making out a 128-G stating [he] rescind[ed[ [his] SNY" status, and was "presently a GP inmate with GP status." *Id.* at 56. This appeal was partially granted via a Second Level Appeal Response dated December 20, 2019. *Id.* at 54–55. Plaintiff was re-interviewed and issued a CDC 128-G Classification Chrono documenting his request to rescind his SNY status, acknowledging that he "fully underst[ood] the ramifications of having been housed in SNY" and the fact that he "could possibly run into some problems on a GP yard after having been housed on an SNY." *Id.* at 51. Plaintiff was also advised that his request would be reviewed at his "next Unit Classification Committee (UCC)," and he could further submit his appeal for a Third Level of Review. *Id.* at 55. Plaintiff's Second Level Appeal Response is signed by Acting Warden M. Pollard. *Id.* Plaintiff now claims, however, that "this is not what [he] agree[d] to []or request[ed]" when he withdrew his original appeal, and as a result he faces an ongoing risk of attack by a "GP inmate, against EOP/SNY inmates in Building 14." *See* ECF No. 4 at 94–95.

  C. <u>42 U.S.C. § 1983</u>

   To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030,

---

WL 3469365, at *7 (S.D. Cal. June 25, 2020) (discussing CDCR's non-designated housing policy and dismissing former GP prisoner's allegations that decisions to "merge" prison yards "ha[d] always resulted in violence when … attempted in the past" as insufficient to state a plausible Eighth Amendment claim for relief).

1035-36 (9th Cir. 2015).

        D.    <u>Fourteenth Amendment Due Process Claims</u>

As noted above, Plaintiff does not identify the constitutional bases for any of his claims in his Complaint, but he does invoke both the Fourteenth and Eighth Amendments in his Motion for TRO. *See* ECF No. 4 at 2. To the extent he implies Warden Pollan and Chief Medical Officer Glynn violated his due process rights with respect to any of the CDCR 602 grievances or appeals he filed or withdrew challenging Dr. Chu's refusal to medically authorize his single-cell status or Dietician Basto's failure to renew his prescription for Boost however, Plaintiff fails to allege any viable due process violation. *See Iqbal*, 556 U.S. at 678.

For example, Plaintiff claims only broadly that Pollan refused to "make [him] GP immediately," and failed to "provide an emergency single cell" for him based on a "agreement" related to the withdrawal of his CDCR 602 appeal. *See* Compl. at 2, 3. He likewise seeks to hold Glynn liable for failing to grant him single cell status or to "provide renewal of [his] diet," *id.* at 2, but does not otherwise explain Glynn's involvement at all–except to say that he had the "authority to modif[y]" Dr. Chu and dietician Basto's decisions and did not "correct []or remedy" those party's actions. *See* ECF No. 4 at 12.

The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). But it does not "protect every change in the conditions of confinement having a substantial impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478 (1995). Instead, process is due only before changes that inflict an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

Plaintiff does not allege to have been deprived of any protected liberty or property interest with respect to either his housing assignment or his medical diet. *See e.g.*,

*Meachum v. Fano*, 427 U.S. 215, 224–25 (1976) (no liberty interest in placement in particular facility); *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (no Due Process right to be housed in a certain barrack or housing unit or with certain inmates); *Ardds v. Hicks,* No. 1:18-CV-01324-NONE-BAM (PC), 2020 WL 4547119, at *8 (E.D. Cal. Aug. 6, 2020) (same); *Powers v. Washington Dep't of Corr.*, No. C11-5806 RBL/KLS, 2013 WL 1755790, at *20 (W.D. Wash. Mar. 29, 2013) (finding no due process liberty interest in changes to inmate's diet), *report and recommendation adopted*, No. C11-5806 RBL/KLS, 2013 WL 1755787 (W.D. Wash. Apr. 24, 2013). And "'[r]uling against a prisoner on an administrative complaint," which appears to be the sole basis upon which Plaintiff seeks to hold Pollan and Glynn liable, "does not cause or contribute to the violation.'" *Ellington v. Clark*, No. 09cv54-OWW-DLB PC, 2010 WL 3001427, at *2 (E.D. Cal. Jul. 29, 2010) (quoting *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)).

Thus, to the extent Plaintiff faults Pollard or Glynn for having failed to grant him either single-cell status or the renewal of his Boost nutritional supplements via 602 inmate appeal and health care grievances, his allegations without more, do not state viable constitutional claim. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure.") (citation omitted); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (due process not violated simply because defendant fails properly to process grievances submitted for consideration); *see also Todd v. California Dep't of Corr. and Rehabilitation*, 615 Fed. Appx. 415, 415 (9th Cir. 2015) (district court properly dismissed claim based on improper "processing and handling of […] prison grievances," since prisoners have no "constitutional entitlement to a specific prison grievance procedure") (citing *Ramirez*, 334 F.3d at 860) (quotation marks omitted); *Shallowhorn v. Molina*, 572 Fed. Appx. 545, 547 (9th Cir. 2014) (district court properly dismissed section 1983 claims against defendants who "were only involved in the appeals process") (citing *Ramirez*, 334 F.3d at 860); *Daniels v. Aguilera*, 2018 WL 558658, at *1 (E.D. Cal. Jan. 24, 2018), *report and recommendation adopted sub nom. Daniels v. Aguillera*, 2018 WL

1763311 (E.D. Cal. Apr. 12, 2018) ("Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process prison grievances.").

Accordingly, the Court finds Plaintiff's Fourteenth Amendment due process claims must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). *See Iqbal*, 556 U.S. at 678-79 (citations omitted); *Valdivia v. Tampkins*, Case No. EDCV 16-1975 JFW(JC), 2016 WL 7378887, at *6 (C.D. Cal. Dec. 19, 2016) (*sua sponte* dismissing claims predicated upon the alleged improper processing of inmate grievances); *Morgan v. Borders*, Case No. EDCV 17-57 JFW(JC), 2018 WL 2213455, at *6 (C.D. Cal. May 14, 2018) (dismissing allegations that inmate appeals officials "allowed transgender discrimination to continue ... unabated" when they denied plaintiff's grievance alleging discrimination as insufficient to state a viable § 1983 claim); *Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

E.   Eighth Amendment Claims

To the extent Plaintiff seeks to hold Defendants Pollan, Chu, Glynn, or Basto liable for violating his Eighth Amendment rights with respect to either his cell assignment or his dietary needs, the Court also finds his Complaint fails to allege a plausible claim upon which § 1983 relief can be granted. *See Iqbal*, 556 U.S. at 678; *Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on prison officials to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). These include "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin*, 515 U.S. 472; *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer*, 511 U.S. at 832.

A prisoner does not have an Eighth Amendment right to be housed in a single cell.

12

*See Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981) (double-celling does not violate Eighth Amendment unless it amounts to unnecessary and wanton pain). Nor is there a Fourteenth Amendment right to claim a particular security classification or housing classification. *See Meachum v. Fano*, 427 U.S. 215, 224–25 (1976) (no liberty interest protected by the Due Process Clause is implicated in a prison's reclassification and transfer decisions); *see also Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007). Neither the Eighth nor the Fourteenth Amendment endows prisoners with a right to be housed in a particular part of the prison or with a particular inmate. *See Meachum*, 427 U.S. at 224–25 (no liberty interest in placement in particular facility); *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (no Due Process right to be housed in a certain barrack or housing unit or with certain inmates); *Bjorlin v. Hubbard*, No. CIV S–09–1793, 2010 WL 457685, *1 (E.D. Cal. Feb. 4, 2010) (same).

Instead, to properly plead "cruel and unusual" punishment, Plaintiff must allege facts which demonstrate that he was confined under conditions posing a risk of "objectively, sufficiently serious" harm and that prison officials had a "sufficiently culpable state of mind." *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995). There is both an objective and subjective component to the inquiry. *Hallett v. Morgan*, 296, F.3d 732, 744 (9th Cir. 2002). First, the Eighth Amendment requires Plaintiff to plead facts sufficient to show he was subjected to an objectively serious deprivation of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 832. The "routine discomfort inherent in the prison setting" is inadequate to satisfy the objective prong of the inquiry. *Johnson*, 217 F.3d at 731.

Second, Plaintiff must allege facts sufficient to plausibly show each official acted with "deliberate indifference" to his health or safety. *Farmer*, 511 U.S. at 834. This requires him to allege facts demonstrating that the official displayed a subjective indifference "to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). "Deliberate indifference" is evidenced only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. If an official "should have been aware of the risk, but was not, then the [official] has not [violated a party's Constitutional rights], no matter how severe the risk." *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002); *Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [the Eighth Amendment] be condemned as the infliction of punishment.").

### 1. Single-Cell Status

With respect to his cell assignment, Plaintiff appears to claim both Warden Pollan and Dr. Chu are violating his Eighth Amendment rights by failing to authorize his placement in a single cell. *See* Compl. at 3; ECF No. 4 at 11. But even if the Court assumes Plaintiff's incontinence is an objectively serious medical condition that could render him potentially eligible for either single-cell housing consideration or dietary supplements, *see e.g., Rankins v. Liu,* No. 2:15-CV-1164-KJM-DBP, 2019 WL 5260452, at *5 (E.D. Cal. Oct. 17, 2019) (finding prisoner's permanent incontinence following transurethral resection of the prostate was objectively serious medical need), *report and recommendation adopted,* No. 2:15-CV-01164-KJM-DBP, 2019 WL 6170635 (E.D. Cal. Nov. 20, 2019), he has failed to allege facts sufficient to show that either Pollan or Dr. Chu acted with "deliberate indifference" to either a serious risk to his health or his safety when they either failed to make him immediately eligible for either accommodation. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "[T]he prison official must not only [be alleged to] 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also [be alleged to have] draw[n] the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837).

While Plaintiff alleges he has been subject to threats and harassment by both his past and present cellmate due to the risk of an "uncontrol[ed] mishap," and that his

medical condition makes him fear a physical altercation with his cellmate, he further admits and has attached a copy of the Institutional Level Notice regarding Health Care Grievance Tracking #RJD HC 20000184, in which his request for single-cell status was rejected as "medically unnecessary." *See* Compl. at 3; ECF No. 4 at 10, 11, 13, 179.[12] Plaintiff does not allege that either Warden Pollan or Dr. Chu played any role in that decision, does not allege that either Pollan or Chu were aware of a serious risk or threat posed by inmate Thedford, and does not allege that either Pollan or Chu actually drew the inference that Plaintiff faced a substantial risk of harm should he remain double-celled with Thedford or any other inmate. *See Farmer*, 511 U.S. at 837. In fact, Plaintiff does not allege to have been physically harmed as a result of his incontinence at all—either at the hands of his former cellmate or his current one. *See Figueroa v. Clark*, No. 1:19-CV-00968-BAM PC, 2020 WL 4700806, at *7 (E.D. Cal. Aug. 13, 2020) (generalized fears of attack, violence and intimidation at the hands of fellow prisoners insufficient to sustain a viable Eighth Amendment failure to protect claim in the absence of any physical injury).

Moreover, neither Plaintiff's Complaint nor the Declaration in Support of his TRO includes facts sufficient to put either Warden Pollan or Dr. Chu on notice that bunking with Thedford posed an excessive or obvious risk of harm. Instead, Plaintiff alleges only

---

[12] To the extent Plaintiff claims Dr. Chu told him he could "only give single-cell status […] when a person has an infectious disease only that is contagious," *see* ECF No. 4 at 88–89, he also fails to allege facts sufficient to plausibly show Dr. Chu's deliberate indifference. Disagreements regarding diagnoses, or mere differences of opinion between a prisoner and medical staff, or between medical professionals regarding the proper course of treatment, do not by themselves give rise to a § 1983 claim. *Toguchi*, 391 F.3d at 1058. "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Nothing in Plaintiff's Complaint or his Declarations suggests the medical assessment of his incontinence as non-infectious, or the California Correction Health Services Operations Manual Comprehensive Accommodation regulations designating single-cell housing assignments as "medical necessary" only when required to control infectious disease or as authorized by a Mental Health Interdisciplinary Treatment Team, was medically unacceptable under the circumstances. *Id.; see also* ECF No. 4 at 179.

that Thedford "constantly spray[s] scent into the air when [he] move[s] around," "say[s] Plaintiff stink[s]," and has taken a "fighting stance" with Plaintiff "about these issues." *See* ECF No. 4 at 10. While the Court is sympathetic to Plaintiff's discomfort, the mere fact that he is subject to derision or shame and fears confrontation as a result does not by itself subject Defendants to liability under the Eighth Amendment. *Pulido v. Lunes*, No. 1:14-CV-01174-DAD-EPG, 2016 WL 336182, at *6 (E.D. Cal. Jan. 28, 2016) ("No case holds that officers can be deliberately indifferent to safety so long as the harm is from a fear of attack, rather than the attack itself."), *report and recommendation adopted*, No. 1:14-CV-01174-DAD-EPG PC, 2016 WL 1224028 (E.D. Cal. Mar. 29, 2016).

For these reasons, the Court finds Plaintiff fails to allege facts sufficient to support an Eighth Amendment failure to protect claim against either Warden Pollan or Dr. Chu. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), 1915A(b)(1); *Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

### 2. *Dietary Supplements*

Finally, to the extent Plaintiff claims Dr. Chu, Dietician Basto, or Chief Medical Officer Glynn violated his Eighth Amendment rights by failing to fulfill his requests for a renewal of his "diet of Boost" nutritional supplements, *see* Compl. at 3; ECF No. 4 at 13–14, he also fails to allege facts sufficient to plausibly show that any of these Defendants personally did so with deliberate indifference to his serious medical needs, or that any failure to continue providing him those supplements caused harm. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Estelle*, 429 U.S. at 104. In fact, while Plaintiff generally attributes the failure to renew his Boost supplements to all three of these parties, *see* Compl. at 3, ECF No. 4 at 13–14, he includes no further facts which plausibly suggest any of them were actually aware of or responsible for authorizing such a renewal. *See e.g., Graves v. Cal. Dep't of Corr. & Rehab.,* No. EDCV 17-1086 JGB (SPx), 2019 WL 8168060, at *7 (C.D. Cal. Nov. 14, 2019) (finding conclusory assertions unsupported by further factual allegations insufficient to infer actual knowledge and indifference); *Marks v. Does*, No. C09-5489 RJB/KLS, 2010 WL 715500, at *5 (W.D. Wash. Feb. 24,

16

2010) (finding conclusory allegations without specific facts regarding defendants' knowledge insufficient to plead deliberate indifference). In fact, Plaintiff claims it was "the responsible nurse [who] did not schedule [him] to visit the physician [in order to] renew [his] diet" and previous prescription for Boost supplements in response to the CDCR 7362 Health Care Services Request Forms he submitted on various occasions between January 12, 2020, and February 16, 2020. *See* ECF No. 4 at 90, 120–130.

For these reasons, the Court also finds that Plaintiff has failed to state a plausible Eighth Amendment claim for relief against any named Defendant with respect to his renewed prescription for Boost. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), 1915A(b)(1); *Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

F.   Leave to Amend

In light of Plaintiff's pro se status, the Court grants him leave to amend his pleading to attempt to sufficiently allege his Eighth Amendment claims. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)). With respect to Plaintiff's purported Fourteenth Amendment due process claims involving the disposition of any CDCR 602 Inmate/Parolee or Health Care Appeal, however, leave to amend is denied as futile. *See Gonzalez v. Planned Parenthood of Los Angeles,* 759 F.3d 1112, 1116 (9th Cir. 2014) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend.").

III.   **Motion for Preliminary Injunction and TRO**

As noted above, the factual basis for both Plaintiff's Eighth and Fourteenth Amendment claims, as well as his Motion for Preliminary Injunction and TRO (ECF No. 4), are contained and incorporated by reference in two separate Declarations, which he filed together with nearly 200 pages of exhibits. *See* ECF No. 4 at 6, 9–18; 87–98. Plaintiff seeks a TRO and Preliminary Injunction requiring Defendants Pollan, Chu,

Basto and Glynn to "make [him] [a] GP inmate," place him on single-cell status, and the "renewal of [his] diet of (Boost)." *Id.* at 5.

Procedurally, a federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party served must appear to defend."). The court may not attempt to determine the rights of persons not before it. *See, e.g., Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 234-35 (1916); *Zepeda v. INS*, 753 F.2d 719, 727-28 (9th Cir. 1983). Pursuant to Federal Rule of Civil Procedure 65(d)(2), an injunction binds only "the parties to the action," their "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation." FED. R. CIV. P. 65(d)(2)(A)-(C).

Substantively, "'[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, __ U.S. __, 135 S. Ct. 2726, 2736-37 (2015) (quoting *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 20 (2008)). "The first factor under *Winter* is the most important—likely success on the merits." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). In addition, "[u]nder *Winter*, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

Here, and because Plaintiff's Complaint has not survived the initial *sua sponte* screening required by 28 U.S.C. § 1915(e)(2) and § 1915A, the United States Marshal has not been directed to effect service on his behalf, and the named Defendants have no actual notice of either of Plaintiff's Complaint or his motions seeking preliminary

injunctive relief. Therefore, the Court cannot grant Plaintiff injunctive relief because it has no personal jurisdiction over any Defendant at this time. *See* Fed. R. Civ. P. 65(a)(1), (d)(2); *Murphy Bros., Inc.*, 526 U.S. at 350; *Zepeda*, 753 F.2d at 727-28. A district court has no authority to grant relief in the form of a temporary restraining order or permanent injunction where it has no jurisdiction over the parties. *Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 584 (1999) ("Personal jurisdiction, too, is an essential element of the jurisdiction of a district ... court, without which the court is powerless to proceed to an adjudication.") (citation and internal quotation omitted).

Moreover, in conducting its initial screening, the Court has found Plaintiff's Complaint fails to state any claim upon which § 1983 relief can be granted and has dismissed it pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Therefore, Plaintiff has necessarily failed to show, for purposes of justifying preliminary injunctive relief, any likelihood of success on the merits of his claims. *See Pimental v. Dreyfus*, 670 F.3d 1096, 1111 (9th Cir. 2012) ("[A]t an irreducible minimum the moving party must demonstrate a fair chance of success on the merits….") (internal quotation marks and citation omitted); *Garcia*, 786 F.3d at 740 ("Because it is a threshold inquiry, when 'a plaintiff has failed to show the likelihood of success on the merits, [courts] 'need not consider the remaining three [*Winter* elements].'") (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)); *see also Williams v. Duffy, et al.,* Civil Case No. 18-cv-06921-BLF, 2019 WL 95924, at *3 (N.D. Cal. Jan. 3, 2019) ("[Having reached th[e] conclusion [that Plaintiff's complaint failed to state a claim], the Court need not reach the remainder of the *Winter* factors."); *Asberry v. Beard*, Civil Case No. 3:13-cv-2573-WQH JLB, 2014 WL 3943459, at *9 (S.D. Cal. Aug. 12, 2014) (denying prisoner's motion for preliminary injunction because his complaint was subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A, and therefore he had not shown he was "likely to succeed on the merits" of any claim, that "the balance of equities tip[ped] in his favor," or the issuance of an injunction would serve the public interest (citing *Winter*, 555 U.S. at 20)).

Finally, Plaintiff has not, and cannot yet demonstrate, that he is or will be subject to immediate and irreparable harm if an injunction does not issue. He claims generally that he has been "attack[ed] … verbally" by his cellmate and has suffered "mental emotional distress" due to fear of an "uncontrol[ed] mishap," *see* ECF No. 4 at 12–13, 14; but he does not allege to have ever been physically injured at the hand of either his former or current cellmates. *See Alliance for the Wild Rockies*, 632 F.3d at 1131 ("Under *Winter*, plaintiff[] must establish that irreparable harm is likely, not just possible."); *Goldie's Bookstore, Inc. v. Superior Court of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984) ("Speculative injury does not constitute irreparable injury."); *Rigsby v. State*, No. CV 11-1696-PHX-DGC, 2013 WL 1283778, at *5 (D. Ariz. Mar. 28, 2013) (denying prisoner's TRO based on fear of potential future injury based on past assaults); *Chappell v. Stankorb*, No. 1:11-CV-01425-LJO, 2012 WL 1413889, at *2 (E.D. Cal. Apr. 23, 2012) (denying injunctive relief where prisoner's claims of injury based on current or future housing decisions were nothing "more than speculative."), *report and recommendation adopted*, No. 1:11-CV-01425-LJO, 2012 WL 2839816 (E.D. Cal. July 9, 2012). A presently existing actual threat must be shown, even though injury need not be certain to occur. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130-31 (1969); *FDIC v. Garner*, 125 F.3d 1272, 1279-80 (9th Cir. 1997); *Caribbean Marine*, 844 F.2d at 674.

To meet Fed. R. Civ. P. 65's "irreparable injury" requirement, Plaintiff must do more than simply allege imminent harm; he must demonstrate it. *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). This requires he allege "specific facts in an affidavits or a verified complaint [which] clearly show" a credible threat of "immediate and irreparable injury, loss or damage." Fed R. Civ. P. 65(b)(A). "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Id.* at 674-75.

Thus, because Plaintiff has failed to serve the required notice upon the adverse parties, has not shown a likelihood of success on the merits, and has cited only

speculative and unsubstantiated fears of potential future harm, the Court **DENIES** his

Motion for Preliminary Injunction and TRO (ECF No. 4). *See Dymo Indus. v.*

*Tapeprinter, Inc.,* 326 F.2d 141, 143 (9th Cir. 1964) ("The grant of a preliminary

injunction is the exercise of a very far reaching power never to be indulged in except in a

case clearly warranting it.").

**IV.    Conclusion and Orders**

　　　　For all the reasons explained, the Court:

　　　　1.    **GRANTS** Plaintiff Leave to Proceed In Forma Pauperis pursuant to 28

U.S.C. § 1915(a) (ECF No. 2).

　　　　2.    **DIRECTS** the Secretary of the CDCR, or his designee, to collect from

Plaintiff's prison trust account the $350 filing fee owed in this case by garnishing

monthly payments from his account in an amount equal to twenty percent (20%) of the

preceding month's income and forwarding those payments to the Clerk of the Court each

time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL

PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER

ASSIGNED TO THIS ACTION.

　　　　3.    **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph

Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

　　　　4.    **DENIES** Plaintiff's Motion for Preliminary Injunction and Temporary

Restraining Order (ECF No. 4).

　　　　5.    **DISMISSES** Plaintiff's Complaint in its entirety for failing to state a claim

upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b),

and **GRANTS** him forty-five (45) days leave from the date of this Order in which to file

an Amended Complaint which cures all the deficiencies of pleading noted *with respect to*

*his Eighth Amendment claims only*. Plaintiff's Amended Complaint must be complete by

itself without reference to his original pleading. Defendants not named and any claim not

re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR

15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc*., 896 F.2d 1542, 1546 (9th

Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated:  September 9, 2020

Hon. Gonzalo P. Curiel
United States District Judge

3:20-cv-00245-GPC-BGS